NO. 07-09-0009-CR
NO. 07-09-0010-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MAY 20, 2010

_____


CHRISTOPHER DEMONT SMITH, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____


FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

NOS. 57,392-A & 57,393-A; HONORABLE HAL MINER, JUDGE

_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.


**MEMORANDUM OPINION**


Appellant, Christopher Demont Smith, was convicted by a jury of one count of

indecency with a child[1] and three counts of aggravated sexual assault of a child[2] and

---

[1]*See* Tex. Penal Code Ann. § 21.11(a)(1) Vernon Supp. 2009).

[2]*See* Tex. Penal Code Ann. § 22.021(a)(1)(B), (2)(B) (Vernon Supp. 2009).

sentenced to four periods of confinement.[3]  In addition to the periods of incarceration ordered, each judgment ordered Appellant "to pay all fines, court costs, and restitution as indicated above."  In each case, the judgment was blank as to "Court Costs."  By six issues, Appellant contests: (1) the legal sufficiency of the evidence; (2) the factual sufficiency of the evidence of indecency with a child; and (3) aggravated sexual assault; (4) whether the trial court violated Appellant's Sixth Amendment right to confrontation; and, (5) & (6) the trial court's assessment of court-appointed attorney's fees.  We modify the trial court's judgment in Cause No. 57,392-A to clarify that payment of $5,000 in court-appointed attorney's fees is not a part of the court costs ordered in this case and affirm the judgment as modified.  The judgment in Cause No. 57,393-A is affirmed.

### Issue One -- Legal Sufficiency of the Evidence

Appellant was charged with sexually abusing S.N.B. at a time when she was five years old.  Appellant contends the lack of physical evidence of sexual abuse during an examination of S.N.B. by Dr. Rebecca Hough, and the subsequent appearance of physical evidence of sexual abuse at a later examination, when coupled with his lack of access to the child during that intervening period, conclusively proves that any sexual abuse to the child was perpetrated by someone other than him.

---

[3]Appellant was originally charged with two counts of indecency with a child in Cause No. 57,392-A, and three counts of aggravated sexual assault of a child in Cause No. 57,393-A.  In Cause No. 57,392-A, the jury found Appellant guilty of count 1 and sentenced him to five years confinement.  The trial court issued an instructed verdict of not guilty as to count two.  In Cause No. 57,393-A, the jury found Appellant guilty of all three counts of aggravated sexual assault and sentenced him to sentences of thirty-five years, thirty-five years, and fifteen years respectively.  The trial court ordered that the five year sentence be served concurrent to any other period of confinement, and that the remaining sentences be served consecutively.

## A.    Standard of Review

When conducting a legal sufficiency review of the evidence to support a criminal conviction, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Drichas v. State*, 175 S.W.3d 795, 798 (Tex.Crim.App. 2005). We do not resolve any conflict of fact, weigh any evidence, or evaluate the credibility of any witnesses, as this is the function of the trier of fact. *See Dewberry v. State,* 4 S.W.3d 735, 740 (Tex.Crim.App. 1999). Instead, we determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the adjudication. *Adelman v.* State, 828 S.W.2d 418, 422 (Tex.Crim.App. 1992). In so doing, we resolve any inconsistencies in the evidence in favor of the adjudication. *Matson v. State,* 819 S.W.2d 839, 843 (Tex.Crim.App. 1991).

## B.    Dr. Hough's Testimony

Dr. Hough testified she first saw S.N.B. on October 2, 2007, for the purpose of determining whether S.N.B. had a urinary tract infection. Dr. Hough testified S.N.B.'s physical examination was limited to checking her heart and lungs. She did not testify to any examination of S.N.B.'s genitalia.

At a second visit on October 19, 2007, Dr. Hough examined S.N.B. to determine why she continued to wet her pants. During this examination, Dr. Hough examined

3

S.N.B.'s vaginal area. She found evidence of sexual abuse, i.e., bruising, blister-type lesions, and hardened tissue. Dr. Hough testified the hardened mass of tissue indicated damage over time or chronic damage. When Dr. Hough asked S.N.B. whether anyone touched her inappropriately, S.N.B. named Appellant. S.N.B. also told Dr. Hough that Appellant "put where he pees in where she pees," and, "[w]hen she told him no, he hit her, and he's done this many times." Dr. Hough was not asked, and did not offer, any opinion regarding when S.N.B. might have suffered the trauma she described.

Having reviewed the entire record, we find no evidence indicating that the trauma discovered by Dr. Hough during the second examination occurred exclusively between the time she first examined S.N.B. and the second examination. Furthermore, even if Dr. Hough's testimony established that S.N.B. was sexually assaulted during that period, that fact does not mutually exclude the possibility that Appellant assaulted her during some other period. The evidence does show that S.N.B. named Appellant in outcries of sexual abuse made to Dr. Hough, Kim Hardy--her grandmother, and Becky O'Neal, a Sexual Assault Nurse Examiner, who also found evidence of sexual abuse when she examined S.N.B. This evidence is legally sufficient to support the jury's verdict. *See Castillo v. State,* 913 S.W.2d 529, 535 n.3 (Tex.Crim.App. 1995); *Rodriguez v. State*, 955 S.W.2d 171, 174 (Tex.App.--Amarillo 1997, no pet.). *See also Coronado v. State*, No. 07-08-0496-CR, 2010 Tex. App. LEXIS 2401, at *9 (Tex.App.-- Amarillo March 31, 2010, no pet. h.). Accordingly, we overrule Appellant's first issue.

4

**Issues Two and Three -- Factual Insufficiency**

   **A.     Standard of Review**

When conducting a factual sufficiency review, we examine all the evidence in a neutral light and determine whether the trier of fact was rationally justified in finding guilt beyond a reasonable doubt. *Roberts v. State*, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007), *cert. denied*, 552 U.S. 920, 128 S.Ct. 282, 169 L.Ed.2d 206 (2007); *Watson v. State,* 204 S.W.3d 404, 415 (Tex.Crim.App. 2006).   We give deference to the fact finder's determination when supported by the record, and cannot reverse a conviction unless we find some objective basis in the record demonstrating that the great weight and preponderance of the evidence contradicts the verdict.   *Watson*, 204 S.W.3d at 417.   The criminal verdict will be set aside "only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence so strong that the standard of proof beyond a reasonable doubt could not have been met."  *Garza v. State*, 213 S.W.3d 338, 343 (Tex.Crim.App. 2007).   In addition, the fact finder is entitled to judge the credibility of the witnesses and may choose to believe all, or some, or none of the testimony presented.  *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991).

Additionally, as directed by the Texas Court of Criminal Appeals, when conducting a factual sufficiency review, we must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).   This does not, however, mean that we are required to discuss *all* evidence admitted at trial.  *See id.   See also*

*Roberts v. State*, 221 S.W.3d 659, 665 (Tex.Crim.App. 2007). In that respect, Appellant contends the State's evidence of indecency with a child is factually insufficient because: (1) S.N.B.'s testimony at trial was inconsistent; (2) neither Dr. Hough nor the SANE nurse swabbed S.N.B. for DNA evidence; (3) Hardy's testimony was biased against Appellant because of his race; and (4) the police did not interview S.N.B.'s grandparents.

### B. Indecency with a Child

A person commits the offense of indecency with a child if a person engages in sexual contact with the child or causes the child to engage in sexual contact. Tex. Penal Code Ann. § 21.11(a)(1) (Vernon Supp. 2009). The term "sexual contact" means any of the following acts if committed with the intent to arouse or gratify the sexual desire of any person; "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child," *id.* at § 21.11(c)(1), or "any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person." *Id.* at § 21.11(c)(2).

In addition to Dr. Hough's testimony described above, Hardy's and S.N.B.'s testimony corroborated Dr. Hough's account of her outcry. S.N.B. also testified Appellant touched her in her "special place" and "it hurt." O'Neal, the nurse who conducted S.N.B.'s SANE examination, testified S.N.B. told her that Appellant "touch[ed] her pee pee," "put his mouth on [her] pee pee," and "put a nail in [her] butt and put a seed in her butt." O'Neal testified S.N.B.'s SANE examination showed evidence of sexual abuse in her vaginal area and her anus showed immediate dilation,

6

indicating repeated penetration. Dr. Hough's examination corroborated the results of O'Neal's examination with regard to S.N.B.'s vaginal area.

Any inconsistency between S.N.B.'s prior outcries and her testimony at trial went to her credibility. Based upon the evidence recounted above, the jury could have reasonably believed that Appellant engaged in sexual contact with S.N.B. even though some of S.N.B.'s trial testimony was inconsistent with her earlier out-of-court statements and her in-court testimony. *See, e.g., In re A.B.*, 133 S.W.3d 869, 873-74 (Tex.App.--Dallas 2004, no pet.); *Washington v. State*, 127 S.W.3d 197, 204 (Tex.App.--Houston [1st Dist.] 2003, pet. dism'd). Moreover, our evaluation of the evidence "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Jones v. State*, 944 S.W.2d 642, 648 (Tex.Crim.App. 1996), *cert. denied*, 522 U.S. 832, 118 S.Ct. 100, 39 L.Ed.2d 54 (1997). Accordingly, to the extent Appellant claims the evidence is factually insufficient because S.N.B.'s prior statements were not credible, we hold that the evidence in support of the jury's verdict was not so weak as to render the verdict clearly wrong or manifestly unjust.

Appellant does not cite any case law or other authority in support of his contention that evidence of indecency with a child is factually insufficient in the absence of the victim being swabbed for DNA. Thus, this contention was insufficiently briefed, and therefore, waived. Tex. R. App. P. 38.1(h). *See Cardenas v. State,* 30 S.W.3d 384, 393 (Tex.Crim.App. 2000).

Neither does Appellant cite any case law or other authority in support of his contention that evidence of indecency with a child is factually insufficient in the absence

7

of the police interviewing the victim's guardian or grandparents. This contention was also insufficiently briefed, and therefore, waived. Tex. R. App. P. 38.1(h). *See Cardenas,* 30 S.W.3d at 393.

Furthermore, to the extent that this portion of Appellant's argument is that the evidence is insufficient because S.N.B.'s grandparents were racially biased, whether a witness's testimony is racially motivated goes to the credibility of the witness and the weight to be given to their testimony. The jury is the "exclusive judge of the credibility of witnesses," and the reconciliation of conflicts in the testimony is also within the "exclusive province of the jury." See Tex. Code Crim. Proc. Ann. art. 36.13 (Vernon 2007); *id.* at art. 38.04 (Vernon 1979); *Jones*, 944 S.W.2d at 647. By rendering a guilty verdict, the jury apparently chose to accept the truthfulness of Hardy's testimony that S.N.B.'s behavior markedly changed after she visited Appellant and his wife, as well her account of S.N.B.'s outcry to Dr. Hough. *Washington*, 127 S.W.3d at 204. The jury could have also believed Hardy's testimony that, even though she "didn't like the idea" of her daughter being with a black man, she "just accepted it and went about [her] business."

Accordingly, we find the State's evidence in support of the jury's verdict of guilty as to the offense of indecency with a child was not so weak as to render the verdict clearly wrong or manifestly unjust. Appellant's second issue is overruled.

## C.     Aggravated Sexual Assault

Appellant contends the State's evidence of aggravated sexual assault at trial was also factually insufficient because:  (1) S.N.B.'s testimony was inconsistent; (2) terms used by S.N.B. in her outcry were unexplained; and (3) S.N.B.'s outcry to Dr. Hough was made while Hardy was in the room.

A person commits the offense of aggravated sexual assault if the person, intentionally or knowingly, causes the penetration of the anus or sexual organ of a child, younger than 14 years of age, by any means, or causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor.  Tex. Penal Code Ann. § 22.021(a)(1)(B) & (a)(2)(B) (Vernon Supp. 2009).

S.N.B.'s outcry statement to Dr. Hough is described above.  Hardy's and S.N.B.'s testimony corroborated Dr. Hough's account of S.N.B.'s outcry, O'Neal's testimony supported S.N.B.'s version of the events, and Dr. Hough's examination corroborated the results of O'Neal's SANE examination with regard to the existence of trauma to S.N.B.'s vaginal area.  Any inconsistency between S.N.B.'s prior outcries and her testimony at trial went to her credibility.  Based upon the evidence recounted above, the jury could reasonably have believed that Appellant committed the offense of aggravated sexual assault.  *See, e.g., In re A.B.*, 133 S.W.3d at 873-74; *Washington*, 127 S.W.3d at 204. The fact that S.B.N.'s testimony was inconsistent does not make it factually insufficient.

Appellant next contends the evidence was factually insufficient because there were terms in S.N.B.'s outcry to O'Neal that were unexplained by S.N.B.  In sexual

abuse cases, a child victim may testify using language appropriate for his/her age to describe the sexual assault because "one cannot expect the child victims of violent crimes to testify with the same clarity and ability as is expected of mature and capable adults;" *Villalon v. State*, 791 S.W.2d 130, 134 (Tex.Crim.App. 1990) (*en banc*), and a child victim's outcry statement alone can be sufficient to support a conviction for aggravated assault. *Coronado*, 2010 Tex. App. LEXIS 2401 at *9; *Kimberlin v. State*, 877 S.W.2d 828, 831 (Tex.App.--Fort Worth 1994, pet. ref'd) (citing *Rodriguez v. State*, 819 S.W.2d 871, 873 (Tex.Crim.App. 1991) (*en banc*). Further, putting aside the terms contested by Appellant, there remains sufficient evidence upon which a jury could reasonably base its verdict.

Finally, Appellant attempts to make a connection between S.N.B.'s outcry to Dr. Hough, made while Hardy was in the room, and S.N.B.'s testimony that "Momma Kim [Hardy] told her what to say" and she "[didn't] know what [Hardy] told her." Whether this testimony affected the verdict was a matter left to the jury's sound discretion. The fact finder is entitled to make these decisions and may choose to believe all, some, or none of the testimony presented. *Chambers*, 805 S.W.2d at 461. By rendering a guilty verdict, the jury apparently chose to accept the truthfulness of S.N.B.'s testimony. *Washington*, 127 S.W.3d at 204.

Accordingly, we find the State's evidence in support of the jury's verdict of guilty of aggravated sexual assault of a child was not so weak as to render the verdict clearly wrong or manifestly unjust. Appellant's third issue is overruled.

10

**Issue Four -- Sixth Amendment**

Appellant next contends the trial court violated his Sixth Amendment right to confront his accuser by permitting the State's prosecutor to stand between S.N.B. and Appellant during a portion of her testimony. During the State's direct examination of S.N.B., the State's attorney requested permission from the trial court to stand between S.N.B. and Appellant. The State's attorney stated that he did "not want to block [Appellant's] view but [S.N.B.] keeps looking over at him and I'm concerned now. . . ." The trial court granted the State's request over Appellant's Sixth Amendment objection based on *Crawford*.[4]

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. U.S. Const. amend. VI.[5] The Confrontation Clause reflects a preference for face-to-face confrontation at trial, but that preference must occasionally give way to considerations of public policy and the necessities of the case. *Maryland v. Craig,* 497 U.S. 845, 849, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990); *Coronado*, 2010 Tex. App. LEXIS 2401 at *9 (construing the public policy considerations of article 38.071, section 2(b) of the Texas Code of Criminal Procedure, as an appropriate constitutional

---

[4]In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that in-court testimony or its functional equivalent (i.e*.,* "material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pre-trial statements that declarants would reasonably expect to be used prosecutorially") may not be used as evidence against an accused unless the accused has an opportunity to confront and cross-examine the maker of the statement. *Id.* at 51.

[5]This right to confrontation was made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965).

accommodation in lieu of face-to-face confrontation). The United States Supreme Court has stated that an exception to the right of face-to-face confrontation exists when the State shows that a special procedure is necessary to protect child witnesses from the trauma of testifying in court. *See Craig,* 497 U.S. at 855.[6]

Here, S.N.B. appeared at trial and was subject to cross-examination. Appellant does not assert that she was hidden from the jury's view or from his counsel's view at any time while she was testifying. Rather, she testified under oath in view of the jury while Appellant's counsel was given an unfettered opportunity to cross-examine S.N.B. while Appellant was in her full view. Accordingly, we cannot say Appellant was denied his constitutional right to confrontation by the limited accommodation made during the State's direct examination. *See Moore v. State*, 169 S.W.3d 467, 470 n.8 (Tex.App.--Texarkana 2005, pet. ref'd) ("[W]hen a witness appears at trial and is subject to cross-examination, the Confrontation Clause is not violated."). *See also Palmer v. State*, 716 S.W.2d 174, 176-77 (Tex.App.--Houston [14th Dist.] 1986, pet. ref'd), *motion for reh'g denied*, 741 S.W.2d 451 (Tex.Crim.App. 1987) (*per curiam*). Appellant's fourth issue is overruled.

---

[6]The determination of whether alternative forms of testimony are necessary should be made on a case-by-case basis. *See Craig*, 497 U.S. at 855. Contrary to Appellant's contention, Texas Code of Criminal Procedure article 38.071 is inapplicable here because the article "applies only to a hearing or proceeding in which the court determines that a child . . . would be unavailable to testify in the presence of the defendant. . . ." Tex. Code Crim. Proc. Ann. art. 38.071 § 1 (Vernon Supp. 2009). Here, S.N.B. did testify in Appellant's presence.

**Issue Five and Six -- Court-Appointed Attorney's Fees**

By issues five and six, Appellant makes a two prong attack on what he contends is the erroneous assessment of attorney's fees in this case. The first prong of Appellant's attack is that a trial court may not order a criminal defendant to repay the State for the costs of a court-appointed attorney without making a determination, based upon competent evidence, that the defendant has financial resources that enable him to offset in part or in whole the costs of legal services provided. In support of this prong of his attack, Appellant relies heavily upon this Court's decision in *Mayer v. State,* 274 S.W.3d 898 (Tex. App.--Amarillo 2008) *aff'd*, No. PD-0069-09, 2010 Tex.Crim.App. LEXIS 100 (Tex.Crim.App. March 24, 2010). The second prong of Appellant's attack is that the trial court erred because it did not orally pronounce the assessment of attorney's fees at sentencing, nor did it declare the precise amount of attorney's fees in its written judgment. In support of this prong of his attack, Appellant relies upon the decision in *Burke v. State,* 261 S.W.3d 438, 439 (Tex.App.--Austin 2008, no pet.) (holding that a judgment assessing an undetermined amount of attorney's fees was error where the trial court did not order the Defendant to pay a specific amount of attorney's fees either in its oral pronouncement or its written judgment). In response, the State does not address the second prong; but, instead, urges this Court to reconsider its judgment and opinion in *Mayer.*[7]

---

[7]At the time the State filed its brief it did not have the benefit of the Court of Criminal Appeals's decision in *Mayer v. State,* No. PD-0069-09, 2010 Tex.Crim.App. LEXIS 100 (Tex.Crim.App. March 24, 2010).

**A.    Reimbursement of Attorney's Fees**

Appellant contends the trial court erred by ordering him to repay the State for the costs of his court-appointed attorney.  Under article 26.05 of the Texas Code of Criminal Procedure, a trial court has authority to order reimbursement of appointed attorney's fees if the court determines, based upon sufficient evidence, that a defendant has financial resources that enable him to offset, in part or in whole, the costs of the legal services provided.  *See* Tex. Code Crim. Proc. Ann. art. 26.05(g) (Vernon Supp. 2009). The record before us does not contain a determination or finding by the trial court that Appellant had any financial resources or was "able to pay" the appointed attorney's fees.

The record reflects that on March 26, 2008, Appellant filed an affidavit, including relevant financial information, wherein he requested the appointment of counsel for representation at trial.  On March 27, 2008, the trial court granted his request and appointed counsel.  Again, on December 18, 2008, Appellant filed a *Pauper's Oath on Appeal* petitioning the trial court to appoint appellate counsel on appeal, and again on January 5, 2009, the trial court determined he was entitled to that relief, ordered the court reporter to prepare a reporter's record, and appointed appellate counsel to assist Appellant in the presentment of his appeal.  Unless a material change in his financial resources occurs, once a criminal defendant has been found to be indigent, he is presumed to remain indigent for the remainder of the proceedings.  Tex. Code Crim. Proc. Ann. art. 26.04(p) (Vernon Supp. 2009).  Therefore, while there is no evidence of record demonstrating a material change in Appellant's financial resources, there was

ample evidence demonstrating that, before trial and immediately following rendition of judgment, Appellant was indigent and qualified for court-appointed counsel.

Without evidence demonstrating Appellant's financial ability to offset the costs of legal services, any order requiring Appellant to reimburse the State for the costs of his court-appointed attorney would be error. *See Mayer v. State*, No. PD-0069-09, 2010 Tex.Crim.App. LEXIS 100 (Tex.Crim.App. March 24, 2010). Accordingly, Appellant's fifth issue is sustained.

**B.     Assessment of Undetermined Amount of Attorney's Fees**

The second prong of Appellant's attack is premised on the argument that the trial court did not order Appellant to pay a specific amount of attorney's fees, either by pronouncement at sentencing or in the written judgment. Even though the State does not address this argument, the validity of Appellant's premise is incorrect. The judgment in question appears to be a form customarily used by the district courts of Potter County, Texas. The introductory summary statements contained on the first page of the judgment state**:**

_____

| Fine: | Court Costs: | Restitution: | Restitution Payable to: |
|-------|--------------|--------------|-------------------------|
| N/A   | $            | $ N/A        | Victim__ Agency/Agent   |

Page two of the judgment contains the statement: "The Court **Orders** Defendant to pay all fines, court costs, and restitution as indicated above." (Emphasis in original). Even though the judgment in question shows a blank for court costs, the *Bill of Costs* contained in the Clerk's Record indicates that Appellant was required to pay $5,000 for

court-appointed attorney's fees in Cause No. 57,392-A. The *Bill of Costs* in Cause No. 57,393-A does not include an amount for attorney's fees. A cost indicated on a certified *Bill of Costs* prepared by the District Clerk can be collected from a criminal defendant. *See generally* Tex. Code Crim. Proc. Ann. art. 103.001, *et seq.* (Vernon 2006). Therefore, to the extent that the judgment does order Appellant to pay court costs, we find that it does order him to pay a definite and defined amount of attorney's fees. Appellant's sixth issue is overruled.

## Conclusion

Having determined that the trial court erred by requiring Appellant to reimburse the State for the costs of his court-appointed attorney, we modify the judgment in Cause No. 57,392-A to clarify that the order to pay court costs does not include a requirement that he pay the $5,000 in attorney's fees contained in the *Bill of Costs.* As modified, the trial court's judgment in Cause No. 57,392-A is affirmed. The trial court's judgment in Cause No. 57,393-A is affirmed.

Patrick A. Pirtle
Justice

Do not publish.

16